## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOYNTON BEACH FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLARIVATE PLC, JERRE STEAD, and RICHARD HANKS,<br><br>Defendants. | Case No. 22-cv-1371<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Boynton Beach Firefighters' Pension Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Clarivate Plc ("Clarivate" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Clarivate; and (d) other public information regarding the Company.

## INTRODUCTION

1.     Plaintiff brings this securities class action on behalf of all persons or entities that purchased or otherwise acquired Clarivate ordinary shares between November 10, 2020 and February 2, 2022, inclusive (the "Class Period"). The claims asserted herein are alleged against Clarivate and certain of the Company's current and former senior executives (collectively,

"Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, promulgated thereunder.

2.      Clarivate is an analytics and information services company that provides subscription and technology-based analytical tools and services for the discovery, protection, and commercialization of scientific research and innovations.  This includes critical data, information, workflow solutions, and domain expertise used by its customers, which include universities, non-profits, funding organizations, publishers, corporations, government organizations, and law firms, across the lifecycle of innovation.

3.      The Company, formerly known as the Intellectual Property and Science assets of Thomson Reuters, was carved out and sold to private equity sponsors Onex and Baring Private Equity Asia in October 2016.  Clarivate became a publicly traded company through a merger with Churchill Capital Corp ("Churchill"), a special purpose acquisition company, or "SPAC."  A SPAC is a shell or "blank check" company formed for the sole purpose of raising money through a public offering to eventually acquire one or more companies.  On May 14, 2019, Clarivate completed its merger with Churchill, and Clarivate's ordinary shares began trading on the New York Stock Exchange (the "NYSE") under the symbol "CCC," which, on February 1, 2021, was changed to "CLVT."

4.      On October 1, 2020, Clarivate acquired 100% of the assets, liabilities, equity interests, and all outstanding shares of CPA Global, an intellectual property software and technology-enabled services company, in a cash and stock transaction valued at more than $8 billion (the "CPA Global Transaction").  As part of the CPA Global Transaction, Clarivate assumed an equity compensation plan that covered a broad group of CPA Global employees.  A

portion of the stock consideration Clarivate paid to acquire CPA Global would be used to fund an employee benefit trust established for the CPA Global equity plan.

5.      As part of its accounting for the CPA Global Transaction, Clarivate booked a receivable from the employee benefit trust for approximately $200 million and a corresponding liability for the future payouts to eligible CPA Global employees, rather than recognize the majority of those stock-based compensation charges as accrued expenses over the 12-month period following the CPA Global Transaction, as required under U.S. generally accepted accounting principles ("GAAP").

6.      Specifically, pursuant to GAAP, the Company should have recognized the share-based compensation as expenses over time because CPA Global had not yet made the majority of those equity compensation payments.   Instead, the Company improperly capitalized those expenses as part of the cost of the CPA Global Transaction, thereby avoiding the negative impact those expenses would have on Clarivate's earnings.   By doing so, the Company minimized its share-based compensation expense, which, in turn, allowed Clarivate to artificially inflate its net income.

7.      Throughout the Class Period, Clarivate repeatedly assured investors that the Company's financial statements were true and accurate in all material respects and that its internal controls and procedures over financial reporting were effective, while simultaneously issuing positive financial guidance for 2021.   Indeed, even after Clarivate acknowledged in April 2021 a material weakness in its internal financial controls and restated its 2020 annual report in May 2021 due to improprieties in the Company's accounting, Clarivate cabined the scope of that material weakness to its accounting for warrants issued in connection with its 2019 merger with Churchill, while reassuring investors that the remainder of its controls were effective.   As a result of those

misrepresentations, Clarivate shares traded at artificially inflated prices throughout the Class Period.

8.      The truth began to emerge on December 27, 2021, when Clarivate disclosed that the Company's financial statements for the year ended December 31, 2020, and the quarterly periods ended March 31, June 30, and September 30, 2021 "should no longer be relied upon because of an error in such financial statements" and would need to be restated.  In a Form 8-K filed with the SEC that day, the Company revealed that the error related to the treatment under GAAP of an equity plan included in the CPA Global Transaction.  Specifically, in connection with certain awards made by CPA Global under its equity plan, Clarivate improperly included $185 million in expenses as part of the acquisition accounting for the CPA Global Transaction.  The Company further revealed that it expected "to report an additional material weakness [in its internal control over financial reporting] following an analysis of the cause of these restatements."

9.      Later that day, shortly before the market closed, *StreetInsider.com* published an article reporting that an analyst at Stifel had lowered his price target on Clarivate from $32.00 per share to $29.00 per share.  The Stifel analyst also noted the suspicious timing of the Company's announcement of its improper accounting in connection with the CPA Global Transaction, which came less than one month after Clarivate's prior CFO suddenly resigned, and determined that the Company's accounting improprieties are likely to impact Clarivate's previously reported earnings and cash flow.

10.     As a result of these disclosures, the price of Clarivate shares declined by $1.86 per share, or more than 7.5%, over two consecutive trading days, from a closing price of $24.74 per share on December 23, 2021 to a closing price of $22.88 per share on December 28, 2021.

11.     Then, on February 3, 2022, before the market opened, Clarivate revealed the extent and impact of the restatements.  In particular, the Company filed amendments to its annual report for the year ended December 31, 2020, and its reports for the quarters ended March 31, June 30, and September 30, 2021, revealing significant decreases in previously reported income from operations, net income, and earnings per share.  Clarivate also revealed that its net income for 2021 "will be significantly below" its previously issued guidance due to the impact of the financial restatements.  Indeed, based on its restated financials, for the nine months ended September 30, 2021, the Company incurred a net loss that was nearly double what it had previously reported.  Moreover, Clarivate admitted that "material weaknesses in internal control over financial reporting existed as of December 31, 2020."

12.     As a result of these disclosures, the price of Clarivate shares declined by $2.90 per share, or approximately 16.4%, from a closing price of $17.71 per share on February 2, 2022 to a closing price of $14.81 per share on February 3, 2022.

13.     As a result of Defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's shares alleged herein, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  As of October 25, 2021, Clarivate had 639,776,102 ordinary

shares outstanding.  Clarivate's ordinary shares trade on the NYSE.  Accordingly, there are presumably hundreds, if not thousands, of investors in Clarivate ordinary shares located within the United States, some of whom undoubtedly reside in this Judicial District.

17.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

### A.     Plaintiff

18.     Plaintiff is a defined benefit public pension fund based in Boynton Beach, Florida, that provides retirement and related benefits to current and retired firefighters of the City of Boynton Beach.  As indicated in the certification submitted herewith, Plaintiff purchased Clarivate shares at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the securities laws alleged herein.

### B.     Defendants

19.     Defendant Clarivate is an analytics company that operates a collection of subscription-based services that purportedly help customers accelerate the discovery, protection, and commercialization of their inventions in the areas of science and intellectual property. Organized under the laws of Jersey, Channel Islands, the Company maintains its principal executive officers at 70 St. Mary Axe, London EC3A 8BE, United Kingdom.  Clarivate's ordinary shares trade on the NYSE under the ticker symbol "CLVT."  As of October 25, 2021, Clarivate had more than 639 million ordinary shares outstanding, owned by hundreds or thousands of investors.

20.     Defendant Jerre Stead ("Stead") has served as Executive Chairman of Clarivate's Board of Directors since May 2019 and the Company's Chief Executive Officer ("CEO") since June 2019.

21.     Defendant Richard Hanks ("Hanks") served as Clarivate's Chief Financial Officer ("CFO") from March 2017 until December 2021.

22.     Defendants Stead and Hanks are collectively referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Clarivate's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. The Individual Defendants were provided copies of the Company's reports and press releases alleged in this complaint to be misleading before, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their position and access to material non-public information available to them, the Individual Defendants knew that the adverse facts and omissions specified in this complaint had not been disclosed to, and were being concealed from, the public, and that positive representations and omissions which were being made were then materially false and misleading.

## **BACKGROUND**

23.     Clarivate is an analytics and information services company that provides subscription and technology-based services that purportedly help customers accelerate the discovery, protection, and commercialization of their inventions in the areas of science and intellectual property. On May 14, 2019, Clarivate became a publicly traded company through completion of a merger with special purpose acquisition company, Churchill.

24.     On October 1, 2020, Clarivate acquired intellectual property software and technology-enabled services company CPA Global, in a cash and stock transaction valued at more

than $8 billion.  As part of the CPA Global Transaction, Clarivate assumed an equity compensation plan that covered a broad group of CPA Global employees.  As part of its accounting for the CPA Global Transaction, Clarivate booked a nearly $200 million liability on its balance sheet for the future payouts to eligible CPA Global employees under the equity plan, rather than recognize the majority of those stock-based compensation charges as accrued expenses over the 12-month period following the CPA Global Transaction, as required under GAAP.

25.    By improperly capitalizing those expenses as part of the cost of the CPA Global Transaction and reflecting them on Clarivate's balance sheet as a liability, the Company avoided the expenses flowing through its income statement and the negative impact that would have on Clarivate's earnings.  As a result, the Company minimized its share-based compensation expense, which, in turn, allowed Clarivate to artificially inflate its net income throughout the Class Period. In addition, because Clarivate's earnings guidance was based on the improper accounting for the stock-based compensation plan, the Company had no reasonable basis for issuing the guidance.

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

26.    The Class Period begins on November 10, 2020, when Clarivate filed a Form 8-K with the SEC, in advance of the Company's annual Investor Day conference to be held later that day, providing its initial full year financial guidance for 2021 that reflected the CPA Global Transaction.  Attached as exhibits to the Form 8-K was a presentation to be used during the Investor Day conference as well as information related to non-GAAP financial measures and reconciliations to GAAP measures.  In those exhibits, Clarivate told investors, among other things, that for the year ended December 31, 2021 the Company expected to report net income ranging between a net loss of $7.5 million and net income of $32.5 million.

27.     On February 26, 2021, Clarivate filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K").  For the year, the 2020 10-K reported income from operations of $2.805 million, a benefit for income taxes of $2.799 million, a net loss of $106.31 million, a basic and diluted loss per share of $0.25, total current assets of $1.328 billion, other non-current assets of $47.944 million, total current liabilities of $1.569 billion, other non-current liabilities of $67.722 million, and total shareholders' equity of $9.593 billion.

28.     In the 2020 10-K, the Company assured investors that Clarivate's management, including Defendants Stead and Hanks, as CEO and CFO, respectively, "evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2020" and the Individual Defendants "concluded that, as of such date, our disclosure controls and procedures were effective."

29.     The 2020 10-K also assured investors that "Clarivate's management assessed the effectiveness of Clarivate's internal control over financial reporting as of December 31, 2020" and, based on that assessment, "management has concluded that Clarivate's internal control over financial reporting was effective as of December 31, 2020."

30.     Appended as an exhibit to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31.     On May 10, 2021, Clarivate filed an amendment on Form 10-K/A with the SEC, amending the 2020 10-K (the "2020 10-K/A").  The 2020 10-K/A included restated financial statements due to errors in the Company's 2020 10-K related to GAAP treatment of private

placement warrants for the purchase of the Company's shares, issued to the founders of Churchill—the SPAC through which Clarivate became a public company in May 2019.  For the year, the 2020 10-K/A reported amended and restated income from operations of $2.805 million, a benefit for income taxes of $2,302, a net loss of $311.869 million, a basic and diluted loss per share of $0.73, total current assets of $1.327 billion, other non-current assets of $47.944 million, total current liabilities of $1.569 billion, other non-current liabilities of $67.722 million, and total shareholders' equity of $9.28 billion.

32.     Moreover, although the 2020 10-K/A acknowledged that Clarivate had recently identified a material weakness in its control over financial reporting, the Company represented that the material weakness related only to its accounting for the warrants at issue.  For example, the 2020 10-K/A stated that the "material weakness [w]as a result of a lack of an effectively designed control over the evaluation of settlement features used to determine the classification of warrant instruments," but the Company reassured investors that "[n]otwithstanding this material weakness, management has concluded that our audited financial statements included in this [2020] 10-K/A are fairly stated in all material respects in accordance with GAAP for each of the periods presented herein."

33.     Appended as an exhibit to the 2020 10-K/A were signed certifications pursuant to SOX, wherein the Individual Defendants certified that "[t]he [2020] 10-K/A] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2020 10-K/A] fairly presents, in all material respects, the financial condition and results of operations of the Company."

34.     Also on May 10, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31,

2021 (the "Q1 2021 10-Q").  For the three months ended March 31, 2021, the Q1 2021 10-Q reported a loss from operations of $34.207 million, a provision for income taxes of $3.569 million, a net loss of $23.954 million, a basic and diluted loss per share of $0.04, total current assets of $1.414 billion, other non-current assets of $42.504 million, total current liabilities of $1.467 billion, other noncurrent liabilities of $62.143 million, and total shareholders' equity of $9.396 billion.

35.     While the Q1 2021 10-Q acknowledged that Clarivate's disclosure controls and procedures were not effective, the Company again limited that lack of effectiveness to "a material weakness in our internal control over financial reporting related to a lack of an effectively designed control over the evaluation of settlement features used to determine the classification of warrant instruments, as disclosed in [the 2020 10-K/A] for the fiscal year ended December 31, 2020." Moreover, the Q1 2021 10-Q continued to assure investors that "[n]otwithstanding the identified material weakness, management believes that the condensed consolidated financial statements included in this [Q1 2021] 10-Q present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP" and that "[t]here were no changes in our internal control over financial reporting that occurred during the period covered by this [Q1 2021] 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

36.     Appended as an exhibit to the Q1 2021 10-Q were signed certifications pursuant to SOX, wherein the Individual Defendants certified that "[t]he [Q1 2021 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [Q1 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

37.     On July 29, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "Q2 2021 10-Q").  For the six months ended June 30, 2021, the Q2 2021 10-Q reported a loss from operations of $45.959 million, a provision for income taxes of $14.437 million, a net loss of $106.164 million, a basic and diluted loss per share of $0.17, total current assets of $5.486 billion, other non-current assets of $42.145 million, total current liabilities of $3.42 billion, other non-current liabilities of $62.149 million, and total shareholders' equity of $11.49 billion.

38.     While the Q2 2021 10-Q acknowledged that Clarivate's disclosure controls and procedures were not effective, the Company represented that the lack of effectiveness in Clarivate's financial controls was limited to "a material weakness in our internal control over financial reporting related to a lack of an effectively designed control over the evaluation of settlement features used to determine the classification of warrant instruments, as disclosed in [the 2020 10-K/A] for the fiscal year ended December 31, 2020."  Moreover, the Q2 2021 10-Q reassured investors that "[n]otwithstanding the identified material weakness, management believes that the condensed consolidated financial statements included in this [Q2 2021] 10-Q present fairly, in all material respects, our financial position, results of operations, and cash flows as of and for the periods presented in accordance with U.S. GAAP" and that "[t]here were no changes in our internal control over financial reporting that occurred during the period covered by this [Q2 2021] 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

39.     Appended as an exhibit to the Q2 2021 10-Q were signed certifications pursuant to SOX, wherein the Individual Defendants certified that "[t]he [Q2 2021 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information

contained in the [Q2 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

40.    On October 28, 2021, Clarivate filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "Q3 2021 10-Q"). For the nine months ended September 30, 2021, the Q3 2021 10-Q reported a loss from operations of $36.887 million, a provision for income taxes of $18.016 million, a net loss of $82.852 million, basic and a diluted loss per share of $0.17, total current assets of $5.189 billion, other non-current assets of $41.808 million, total current liabilities of $3.161 billion, other non-current liabilities of $58.332 million, and total shareholders' equity of $11.21 billion.

41.    In the Q3 2021 10-Q, Clarivate represented that, based on the Company's evaluation of the effectiveness of its disclosure controls and procedures, the Individual Defendants concluded that "[Clarivate's] disclosure controls and procedures are effective." The Q3 2021 10-Q stated that "we designed and implemented a new control to evaluate settlement features used to determine the classification of any new warrant instruments" and that "[b]ased on the actions taken, as well as the evaluation of the design of the new control, and the fact that there have been no new warrant instruments issued recently nor in the foreseeable future, we determined that the material weakness has been remediated as of September 30, 2021." In the Q3 2021 10-Q, Clarivate continued to assure investors that "[t]here were no changes in our internal control over financial reporting that occurred during the period covered by [the Q3 2021] 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

42.    Appended as an exhibit to the Q3 2021 10-Q were signed certifications pursuant to SOX, wherein the Individual Defendants certified that "[t]he [Q3 2021 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information

contained in the [Q3 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

43.    The statements set forth above in ¶¶ 26-42 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants willfully or recklessly made and/or caused Clarivate to issue materially false and misleading statements that failed to disclose that the Company lacked effective disclosure controls and procedures as a result of a material weakness in its internal control over financial reporting that was not limited to how Clarivate accounted for certain warrants, and as a result, certain of the Company's reported financial results were inflated because of Clarivate's improper acquisition accounting of the CPA Global Transaction.  In truth, and as the Company admitted, Clarivate had a material weakness in its internal controls over financial reporting that led the Company to improperly account for nearly $200 million in stock-based compensation expenses as part of the CPA Global Transaction, and caused Clarivate to restate its previously issued financial statements following its acquisition of CPA Global.  As a result of that improper accounting, for the year ended December 31, 2020 and the nine months ended September 30, 2021, Clarivate had overstated its reported pre-tax earnings by more than $121 million over those periods, and for the four quarters following the CPA Global Transaction, the Company had overstated its reported net income (or understated its net loss) by a combined $115 million.  Moreover, because the Company relied on its improper accounting for the CPA Global Transaction in issuing its financial guidance to investors, Clarivate's 2021 net income guidance lacked a reasonable basis when made.

## THE TRUTH EMERGES

44.    On December 27, 2021, Clarivate filed a Form 8-K with the SEC, disclosing that the Company's prior financial statements for the year ended December 31, 2020, and the quarterly

periods ended March 31, June 30, and September 30, 2021 "should no longer be relied upon because of an error in such financial statements" and would need to be restated.  Specifically, Clarivate revealed that it had improperly included $185 million in expenses in connection with stock compensation awards to eligible CPA Global employees as part of the acquisition accounting for the CPA Global Transaction, instead of recognizing expenses for the majority of those awards as stock-based compensation charges over the 12-month vesting period from October 1, 2020 to October 1, 2021.  As a result, Clarivate stated that it "anticipates that the restated financial information will affect GAAP income (loss) from operations, benefit (provision) for income taxes, net income (loss), earnings (loss) per share, current and non-current assets, current and non-current liabilities, and shareholders' equity."  The Company also disclosed that it expected "to report an additional material weakness following an analysis of the cause of these restatements."

45.     Later that day, shortly before the market closed, *StreetInsider.com* published an article reporting that an analyst at Stifel had lowered its price target on Clarivate from $32.00 per share to $29.00 per share.  The Stifel analyst also noted the suspicious timing of the Company's announcement of improper accounting less than a month after Clarivate's former CFO resigned, and the analyst determined that the accounting improprieties are likely to impact the Company's prior reported earnings and cash flow.

46.     As a result of these disclosures, the price of Clarivate shares declined by $1.86 per share, or more than 7.5%, over two consecutive trading days, from a closing price of $24.74 per share on December 23, 2021 to a closing price of $22.88 per share on December 28, 2021.

47.     Then, on February 3, 2022, Clarivate filed restated financials for the year ended December 31, 2020 and the three quarters ended March 31, June 30, and September 30, 2021.  The Company confirmed that the restated financial information affects Clarivate's previously reported

"GAAP income (loss) from operations, benefit (provision) for income taxes, net income (loss), earnings (loss) per share, current and non-current assets, current and non-current liabilities, and shareholders' equity."  Specifically, as a result of its improper accounting, for the year ended December 31, 2020 and the nine months ended September 31, 2021, the Company overstated its pre-tax earnings by more than $121 million over those periods.  Clarivate also disclosed that its net income for 2021 "will be significantly below" its previously issued guidance "due to the impact of the restatements."  In addition, the Company stated that the impact of the financial restatements on net income "is significant over the last four quarters [Clarivate] reported," revealing that Clarivate had overstated its net income (or understated its net loss) by $115 million over those quarters.  Indeed, over the first three quarters of 2021, the Company incurred a net loss that was nearly double what it previously told investors.  Moreover, Clarivate admitted that "material weaknesses in internal control over financial reporting existed as of December 31, 2020."

48.    As a result of these disclosures, the price of Clarivate shares declined by $2.90 per share, or approximately 16.4%, from a closing price of $17.71 per share on February 2, 2022, to a closing price of $14.81 per share on February 3, 2022.

## LOSS CAUSATION

49.    During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Clarivate shares and operated as a fraud or deceit on the Class (as defined below).  Later, when the truth concealed by Defendants' prior misrepresentations and omissions was disclosed to the market, the price of Clarivate shares fell precipitously, as the prior artificial inflation came out of the price over time.  As a result of their purchases of Clarivate shares during the Class Period—and Defendants' material misstatements and omissions—Plaintiff and other member of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## **CLASS ACTION ALLEGATIONS**

50.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Clarivate ordinary shares during the Class Period.  Excluded from the Class are Defendants and their families, directors and officers of Clarivate and their families and affiliates.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims as a class action will provide substantial benefits to the parties and the Court.  As of October 25, 2021, Clarivate had 639,776,102 ordinary shares outstanding, owned by hundreds or thousands of investors.

52.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Clarivate shares;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damages sustained by Class members and the appropriate measure of damages.

53.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

54.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

56.     Clarivate's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

57.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Clarivate who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when they were made, nor were any of the projections or forecasts made by Defendant expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

58.     At all relevant times, the market for Clarivate's shares was an efficient market for the following reasons, among others:

(a)    Clarivate's shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Clarivate filed periodic public reports with the SEC and the NYSE;

(c)    Clarivate regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Clarivate was followed by several securities analysts employed by numerous major brokerage firms, who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

59.    As a result of the foregoing, the market for Clarivate shares promptly digested current information regarding Clarivate from all publicly available sources and reflected such information in the price of Clarivate shares.  Under these circumstances, all purchasers of Clarivate shares during the Class Period suffered similar injury through their purchase of Clarivate shares at artificially inflated prices and the presumption of reliance applies.

60.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business and operations—information that Defendants were obligated to disclose—positive proof

of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the significant negative impact of the Company's improper accounting for the CPA Global Transaction on Clarivate's previously issued financial reports and its net income guidance for 2021, that requirement is satisfied here.

## CAUSES OF ACTION

### COUNT I

**For Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5
Against All Defendants**

61.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

62.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which intended to and, throughout the Class Period, did (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Clarivate shares at artificially inflated prices.

63.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to maintain artificially high market prices for Clarivate shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

64.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

65.     During the Class Period, Defendants made the false statements specified above, which they knew to be false and misleading, or recklessly disregarded the truth that they were false and misleading, in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

66.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Clarivate's true condition from the investing public and to support the artificially inflated prices of the Company's shares.

67.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Clarivate shares.  Plaintiff and the Class would not have purchased the Company's shares at the prices they paid, or at all, had they been aware that the market prices for Clarivate shares had been artificially inflated by Defendants' fraudulent course of conduct.

68.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's shares during the Class Period.

69.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act
Against the Individual Defendants**

70.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of Clarivate within the meaning of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Clarivate, the Individual Defendants had the power and ability to control the actions of Clarivate and its employees.  By reason of this conduct, the Individual Defendants are liable under Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.     Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: March 11, 2022

/s/ Scott R. Foglietta

Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff Boynton Beach
Firefighters' Pension Fund*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN
 & LEVINSON**
7080 Northwest 4th Street
Plantation, FL 33315
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff Boynton
Beach Firefighters' Pension Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Jon Raybuck, on behalf of Boynton Beach Firefighters' Pension Fund ("Boynton Beach Fire"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Boynton Beach Fire. I have reviewed the complaint with the Fund's legal counsel. Based on the legal counsel's knowledge and advice, Boynton Beach Fire has authorized the filing of the complaint.

2. Boynton Beach Fire did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Boynton Beach Fire is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Boynton Beach Fire's transactions in the Clarivate PLC securities that are the subject of this action are set forth in the chart attached hereto.

5. Boynton Beach Fire has not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

6. Boynton Beach Fire will not accept any payment for serving as a representative party on behalf of the Class beyond Boynton Beach Fire's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___10___ day of March, 2022.

DocuSigned by:

*Jon Raybuck*

B01A6891CB414A7...

Jon Raybuck
Chairman
*Boynton Beach Firefighters' Pension Fund*

**Boynton Beach Firefighters' Pension Fund**
**Transactions in Clarivate PLC**

| Transaction | Date | Shares | Price |
|:---:|:---:|:---:|:---:|
| Purchase | 03/16/2021 | 12,340 | 26.3403 |